... Jarroh Ally I'm Jim Daniels, I represent the Appellant Digital Ally, I'll refer to it hereafter if I may as Digital. My friends represent Appellee Taser, I'll refer to it as Taser, mindful that it's changed its name to Axon. Time permitted, I propose to do three things, first to refocus our attention from what the why it is the law and why it should not be the law, in particular with respect to a Robinson Patman claim. Second, I will explain why we have the temerity to suggest that the late Judge Scalia's pronouncements in Omni v. City of Columbia, or perhaps vice versa, are in fact dicta when they say that in fact bribing a public official is among the rights protected under the Petition Clause of the First Amendment, and indeed are also protected under Parker State Action Immunity. And third, I'm going to suggest, and hopefully again obtain agreement, that whatever regime of immunity, whether founded on Norr Pennington or Parker, that was erected in Omni was destroyed in North Carolina dental examiners. We'll explain that the immunity that Judge Scalia created in Omni... Can you just... I beg your pardon, Your Honor. We who are called judge get sort of persnickety when those who are titled justice... Oh, I beg your pardon, Your Honor. I guess I tend to lump all who have taken the veil together. And I apologize, Your Honor. Some of us are more virginal than others. There you go. Thank you. Thank you, Your Honor. Justice, Mr. Jehu, whom I greatly respect, I'm simply referring to them because it's, for whatever reason, easier for me to say than Omni. I don't know why. In any event, Justice Scalia's regime of immunity in Omni required only one thing. So cite me to some cases that say that Omni's bribery discussion is non-binding dicta. Ah, there aren't any. There aren't any. Didn't the Tenth Circuit's decision as a coal, C-O-L-L, is that pretty much say... It kind of meant what it said in Omni? Well, assuming that the Tenth Circuit is allowed by panel to overrule a prior Tenth Circuit decision that held exactly to the contrary, keeping in mind that that prior Tenth Circuit decision was never mentioned in Omni, nor was any other decision which had held that bribery was not conduct that was within the protections of either Nora Pennington or Parker State Action, and that the Tenth Circuit said before call, you know there is corrupt. There are corrupt practices which may prevent you from getting Parker immunity or Nora Pennington immunity. But in call, you rely on Tau and HALCO. And in call, it specifically says Tau was dicta and contrary to the clear holding in Omni. And I don't see how you can cite those. Well, keep in mind that the principal case is instructional systems where the Tenth Circuit held, albeit some years ago in the early 80s, that bribery of an official does not entitle one to First Amendment immunity from antitrust claims, and it held it quite specifically. The Tenth Circuit then never mentions instructional systems again when it decides to call. So one would think that if a panel bound to observe the continuing validity of a prior panel opinion, which it can't reverse any more than I presume a panel of this court can reverse another panel of this court, or a prior panel of this court, they should have mentioned it and said, oh, by the way, you know, whatever Justice Scalia said in Omni has completely negated all of this. They didn't say that. There is such a thing as sub salientio. Well, I think that's right. The Supreme Court gets to say. Of course, I'm not talking about the Supreme Court. I'm talking about that legislative court that is the Tenth Circuit, which is obliged to follow its own rules of its own jurisprudential rules regarding panel opinions and the manner in which they may be then subsequently abrogated by that court itself. Would you mind if I'm turning to the point that you mentioned, that you think that whatever Norr Pennington may do to your Section 1 claim, it shouldn't do anything to your Section 13C claim? Well, think of it this way. Norr Pennington, and a lot of what I say is equally applicable to Parker, Justice Scalia rolls them together. That's appropriate. And by the way, would it be similarly appropriate to have to conduct the same analysis under the local government act, which, as I read it in GF Gaming, pretty much tracks at least the Parker analysis? I would say so, keeping in mind, of course, that the act is the least immunity because it does not immunize one from anything except Clayton Act damages, not Clayton Act injunctions, and not Clayton Act attorney's fees. What are you seeking here? Now, we are seeking an injunction and damages and attorney's fees. I see. So the local government act would not provide the same scope of relief to the defendants as Norr Pennington. It would not, Your Honor. This is our position with regard to Robinson, Patman, and Sherman. We know what Parker says. Parker says, you know, we don't think that Congress, when it enacted the Sherman Act, and thus prohibited contracts, accommodations, and conspiracies in retrainers' trade in Section 1, let's say, meant to affect the operations of government, which themselves may, in a governmental interest of a sovereign state, affect trade adversely, and the very kind which we wish to promote. In the Sherman Act's general, I just quoted it to Your Honor. The Robinson-Patman Act is not. The Supreme Court says it's specific. Each proscription stands on its face. They require no showing of injury to commerce. They are meant to protect competitors and not competition. And that a violation when shown, when conduct contrary to the statute occurs, it is a violation. Without no market power, no showing of effect on competition, nothing. The Robinson-Patman Act was construed by the Supreme Court itself to apply to local governments in Jefferson County Pharmaceutical Association. That's what it said. Because that was what was at issue there, whether these local governments could, in effect, control the price of pharmaceuticals, which would then violate the discriminatory pricing provisions of Robinson-Patman A&D, 2 A&D, or 12, or rather 13 A&D. So the Supreme Court said that. The Supreme Court also said, with no reference to Robinson-Patman or Parker, strike that, with no reference to nor Pennington or Parker, they said in California Motor Transport that bribing a public official violated the anti-bribery provisions of Section 2C of Robinson-Patman. That's what they said. That's not what Digital says, what Daniel says. That's what they said. So, yes, we've got a nice general prescription against conduct in restrained trade. That's the Sherman Act. That's wonderful. But we have a highly specific, whatever else you want to say about Robinson-Patman, and your honors could probably say plenty, we have a highly specific provision that prohibits the communication of bribes and the connection with the sale of goods and commerce, which according to the Supreme Court applies to a governmental purchaser, and according to the Supreme Court, in the case of a governmental purchaser, results in a violation of that very specific provision of Robinson-Patman. So that's why we say it's different. Now the final point, we know what Justice Scalia said in Omni. He said Parker, and thus Norr-Pennington Immunity, is going to attach whenever there is a showing that the governmental entity had the power to do what you asked it to do. And it doesn't matter whether you bribed it to do it, and it doesn't matter whether you conspired with it to do it, it's sufficient alone if that governmental entity in Omni, it was a zoning board, had the power to erect, to create zoning regulations which in effect put a competitor out of business. Now if that was the holding entity, that could not have survived North Carolina Board of Dental Examiners, which says very specifically that states cannot authorize anyone, including in that case a state instrumentality, to violate, to impair competition, and then just claim that it's legal. That's exactly what Judge Scalia said the recipe was in Omni. Dental Examiners looks behind, looks behind, does all of the things Justice Scalia did not want done, for undoubtedly excellent federalism reasons, but Dental Examiners looks behind, in that case, a prescription by, a regulation by a state board controlled by dentists, of non-dentist operated tooth cleaning parlors. Now, that dental board had the unqualified ability... Just to let you know, you're into your rebuttal time, but you can... I beg your pardon, I'll quickly conclude here. That dental board had the unqualified ability, per Omni, to do exactly what it did. But exactly what it did was declared by the Supreme Court to be anti-competitive, and without regard to claims of immunity. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Pam Peterson on behalf of Taser International. The District Court, in this case, dismissed all of Digital's antitrust claims, both federal and state. But Digital here has only briefed and raised on appeal the dismissal of Count 3, the Robinson-Patman Section 2C claim. So we would ask that the Court summarily affirm the dismissal of the Section 4, or the Count 4 Sherman Act claim, and the Counts 5 through 8 state law claims. We think it's also appropriate for the Court to summarily affirm the decision to dismiss the Count 3 claim under Section 2C based on controlling Supreme Court and Tenth Circuit law. The District Court really got it right here. Nor Pennington Immunity bars Digital's antitrust claims regardless of their statutory basis. Can I just, I guess since you started there, what makes you say that the Sherman Act Section 1 claim is not at issue in front of us? It's not been briefed or argued as a separate basis for here. In fact, in the first issue that's raised by Digital, they basically say that, let me find the language here, Nor Pennington may indeed shield citizens' efforts to influence government officials from attack under the Sherman Act, but then they go on to say, but it fails under Section 2C of the Robinson-Patman Act and don't otherwise brief or argue anything relating to the Sherman Act at all. So we do believe that the only thing that's for merits review really in front of this panel. Issue number two says, is there immunity from antitrust claims where the government entity acts not in a regulatory capacity but as a commercial participant? Correct. Issue number three is about Board of Dental Examiners, which is a Section 1 case, not a Robinson-Patman case. Cole is a Section 1 case. I mean, I agree there's no mention of state law claims, but I guess it's a little surprising to hear you say that Section 1 isn't before us. Well, I think, Your Honor, that the focus clearly on the briefing is on the Section 2 Robinson-Patman Act. Well, they think it's stronger and easier, but I'm not sure that they've limited it. I think regardless, in terms of both Cole and Omni, you're talking about North Pennington being applied across antitrust statutes in a broad way and that there's nothing really special about the Robinson-Patman Section 2 claims that would somehow trump the kind of First Amendment considerations that are behind the doctrine when there is government petitioning that is involved. What about Mr. Daniels' point that the First Amendment doesn't protect bribery, so why would you interpret North Pennington, which is grounded in the First Amendment, to immunize bribery from otherwise applicable laws like Robinson-Patman? The First Amendment protects government petitioning, and what Omni makes very clear is that it's very difficult to apply when you're talking about lobbying and other types of forms of petitioning of the government as to the type of conduct that's involved there. Is there a difference between bribery and lobbying? Well, they may call it bribery, for example, in the Second Amendment complaint here, but really what is described in the complaint is no more than just lobbying of municipalities to use, for example, laws that are on the books for sole source and no-bid contracts. It really is the essence of lobbying and petitioning the government, but Omni made it... That's not what I asked. No, no, it seems to me that they culled from various newspaper accounts criticisms or question-raising about six or seven different cities, and in some of them probably what the complaint says is nothing other than they actually persuaded the officials responsible for decision-making to do sole source and probably doesn't do much more than that. But I thought in a few of them they have allegations about benefits personally provided to certain decision-makers paid for trips, and I guess that's the one that's coming to mind, and then there's one about giving business to, I don't know, the mayor's campaign manager or something like that. First of all, do you think that that on its face crosses the line into Section 2, Robinson-Pattman? I don't, Your Honor. When you search for the word bribery in the complaint, basically it shows up in the headings.  types of violations, not by TASER, but by the government officials involved in some of these different scenarios. And so there really is no specific identified bribe paid to any government procurement official that have responsibility to grant TASER these particular contracts for our body cameras. It's just not there. But in any event, whether it's bribery or not, Omni I think is very clear that it's not only conspiracy that there's no exception for in terms of North Pennington community, but it also is any form of corruption or bribery, and that that applies broadly across antitrust statutes and would also encompass the Section 2C claims. I want to address a few things specifically. It is one of the arguments in the reply brief, actually the opening, relating to, on pages one and two, the claim that there are these four circuit court decisions that TASER somehow failed to refute that apply commercial bribery to Section 2 claims. And I wanted to address that because the question really is not whether Section 2 encompasses commercial bribery claims. Robinson-Patman Section 2. I'm sorry? Robinson-Patman Section 2. Yes. I'm sorry if I misspoke there. But the question really isn't whether or not bribery claims fall within Section 2C, and clearly that section was enacted as a price discrimination type of a claim, and that's not something that is alleged here at all. It's certainly not universally accepted that bribery claims fall within that section to begin with. But even if you assume for the purposes of this proceeding that they do fall within there, the question is still whether or not that conduct, if it involves government petitioning, and certainly not all conduct under 2C involves government petitioning, but when it does, does immunity principles apply to exclude those types of claims? And none of those four cases address that issue at all. They really are simply irrelevant. They all proceed omni. Only one of them involve government petitioning at all, and that's the Rangan case, which has subsequently been overruled by the Ninth Circuit. The others all involve private parties without government petitioning, and so they don't raise the same kind of First Amendment concerns. And none of them, of course, are from the Tenth Circuit, and the Tenth Circuit is what controls here, and the Cole case has ruled specifically that Norr-Pennington applies to bribery claims. Am I remembering right? The Tenth Circuit Norr-Pennington cases don't address the Robinson Patent Act. Well, what Cole says, and I think what Omni says as well, is that bribery is not an exception to Norr-Pennington immunity, and that it applies to these claims. I think if you go back to Omni, Omni specifically talks about and distinguishes a California motor transport case, and that is a case where there's language in there that says bribery of a public purchasing agent may constitute a violation of Section 2 of the Clayton Act. That case didn't involve actual bribery claims at all, and so under Digital's own definition, it's dicta. But I think the importance of that in Omni is that the court was well aware of the potential of 2C claims relating to bribery, and they still, having acknowledged that and then distinguishing that particular case, held in favor of broad immunity protection that encompasses both conspiracy and bribery. The dental examiner's dissent, I think this is really a stretch where you're trying to rely on a dissent in terms of something that has abrogated a landmark Supreme Court decision. In that case, clearly no dissent is binding authority, but the dissent in dental examiners also expressly recognized that Omni's rejection of corruption, and so it, like the majority, found that and stated that Omni had this broad rejection of corruption types of exceptions, and so it is in alignment with that. It simply complained that the majority was watering down the holding of Omni, basically in situations where there was a delegation of sovereign authority to, in this case, a dental examiner board. That type of delegation is not at issue in this case, and so like the district court said here, a dissent is recognizing the diminished, perhaps, application in a certain context of a decision is not the same as abrogation of a prior Supreme Court decision. Can you just go back for a minute and point me to, I think, the reference that you said Omni makes either to the Robinson-Patman Act or to California Motor Transport with... Yes, so Omni doesn't specifically call out or mention 2C in its decision. That's true, but there is a discussion at Omni pages 380 to 82 of the California Transport case. That case has a line in it that digital has relied on that is truly a dicta statement because that case didn't involve bribery either. It was a sham exception case, but in that case, it said, bribery of a public purchasing agent may constitute a violation of Section 2C of the Clayton Act, and so the Supreme Court, clearly aware of that language in a prior Supreme Court decision, still held that bribery was not an appropriate exception and that it did not nullify North Pennington immunity or the application of it. The importance, really, of California Motor Transport is the fact that it did have language in it relating to Section 2C of Robinson-Patman and still ruled the way that it did. I think that digital really ignores the Tenth Circuit's decision in Cole, which really is controlling here. They acknowledge that the Tenth Circuit law doesn't... It doesn't ignore it. It just actually spends quite a lot of time attending to it and telling us that it can't be followed. True, in its opening brief, it doesn't mention it at all in its brief. It asks us to disregard it. In Cole, this is a post-Omni decision that was a bribery case and applied North Pennington to preclude that claim in any event, and so it certainly did not treat Omni as any kind of dicta, and that really is the law that controls, digital acknowledges that the Tenth Circuit law controls this appeal. There still exist other remedies in a bribery circumstance of a public official to obtain it. There are, Your Honor, because these cases really only apply in the antitrust context and only when there's government petitioning. If you have things between private parties, that's still... Well, if you have something between a private party and a government official where money exchange hands, it may or may not be an antitrust violation, but the contract can still be void at an issue. Yes, and Omni does recognize that, that this is limited to the antitrust area. So unless Your Honors have any further questions, I believe... By the way, do you agree with your friend's point that the Local Government Act would not, in fact, be a complete alternative ground in support of affirmance here because that act merely precludes certain remedies, but not all the remedies? Yes, the injunction remedy would survive in that regard. Thank you, Your Honor. Thank you, Counsel. Mr. Daniels? May I please, Your Honors? I do wish to be brief. My friend indicated, and I think the court has addressed it, and I don't wish to elaborate on its interaction with my friend, but there is one claim, a state law claim arising under California Business and Professional Code 1743, which was the only claim that the district court assigned two grounds for dismissal for. And one of the grounds was that, well, we have not defended that claim on appeal. And so that's the California Business and Professional Code 143 claim. The other claims, I think, as the court has pointed out, were all dismissed on North Pennington grounds, and we've attacked those grounds. And we believe in the bargain, have attacked the grounds upon which all of the claims were dismissed, with the notable exception of the Section 1743 claim, which we did not defend on the alternative ground. Now, counsel has said that it's not universally accepted that North Pennington applies to bribery, yet has failed to cite a single case that says it doesn't. Now, keep in mind that the language of North Pennington 2C, 15 U.S.C., 13C, is, I mean, it doesn't look like the federal bribery statute that one saw in U.S.P. McDonald, for example, but it simply provides that the communication of anything of value to someone in the context of a transaction involving a sale of goods in commerce, when that value is given for something other than actual goods or services transmitted in exchange for the value, that it is prohibited. And we've cited four opinions from four U.S. Court of Appeals, all of whom say that commercial bribery is prohibited under 2C. Likewise, the Supreme Court itself cited Rangan, I don't know whether it's been overruled by the Ninth Circuit or not, the Supreme Court itself cited Rangan in California Motor Transport when it made the statement, which my friend has characterized as dicta. Can I ask you this? Yes, Your Honor. Some of the sentences in your complaint after reciting the story in Albuquerque and the story in L.A. and the story in other places mirror the language of 2C, which discusses, which applies to certain kinds of things paid either to an agent of the other side of the transaction or to the actual other side of the transaction. Yes, Your Honor. I want to focus for one second on the payment to the actual other side of the transaction. Bribery is a very odd word to use to describe that. Well, yes. In other words, and what Your Honor is saying is, is there evidence that the actual incorporated, the city of Memphis incorporated in 1823 or whatever, was actually given some value? Right, and you tell certain stories about you took on a big public, or they took on a big public relations campaign to inform the citizens that the police are now going to have body cams and everybody should feel better about that. I mean, bribery? And part of the problem with that prong of 2C, the part that says giving to the other side of the transaction, as I think the Supreme Court has indicated, is it's not that easy to separate a discount from whatever 2C is supposed to apply. It's a lot easier if you're paying to an agent, but bribery? I do understand your point, Your Honor's point, and we do not assign in our complaint any instance in which a municipality, qua municipality, has actually received something of value itself into its coffers. All we have been able to identify in our allegations is the communication of value for other than services, we say, to agents and instrumentalities, personnel of these various cities, policemen, purchasing agents, mayors in the case of the city of Memphis, police chiefs in the case of the city of Albuquerque. So maybe bribery is... Well, the reason it matters is that you make a point that on its face has something to be said for it, that maybe the First Amendment doesn't protect actual bribery. And so exactly what you're using the term to apply to may not quite fit that point. I do apologize. I hadn't gotten Your Honor's point. I do see and acknowledge Your Honor's point. Would the First Amendment then protect the kind of payments that were made, let's say, to the police chief of the city of Albuquerque or to the campaign manager of the mayor of the city of Memphis, keeping in mind that we believe that First Amendment rights would not extend to my ability to bribe the clerk? Well, I guess my only point would be that maybe those questions are not that easy to answer, and hence maybe there is a somewhat more categorical Norr Pennington or Parker protection from using the antitrust laws, including the Robinson-Patman piece, to attack those kinds of maybe somewhat murky forms of bribery. I do understand that. And of course, our response, Judge, is that whatever, and obviously you've pointed out murkiness, and God knows the Robinson-Patman is generally speaking a swamp of murkiness, not so much 2C, but 2C... You're well over your time, so wrap up. Oh, I do apologize, Your Honor. 2C is nonetheless far more specific than the Sherman Act, and there is authority that it is supposed to apply in a situation like this, notwithstanding immunity. Thank you, Your Honor.